IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMPIRE FIRE AND MARINE INSURANCE COMPANY, Plaintiff, | : : : : : | 4:09-cv-422<br><br>Hon. John E. Jones III |
| v. | : : | Hon. Thomas M. Blewitt |
| ROBERT A JONES d/b/a R.A. JONES & SONS and JAMES DRUMHEISER, Defendants. | : : : : : | |
| and | : : | |
| JAMES H. DRUMHEISER, Plaintiff on the Counterclaim and Cross Claim, | : : : | |
| v. | : : | |
| EMPIRE FIRE AND MARINES INSURANCE COMPANY, Defendant on the Counterclaim, and ROBERT A. JONES d/b/a R.A. JONES & SONS, Defendants on the Cross Claim. | : : : : : : : : | |

# MEMORANDUM

## September 13, 2010

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

This matter is before the Court on the Report and Recommendation

("R&R") of Magistrate Judge Thomas M. Blewitt (Doc. 54), filed on August 19,

1

2010, which recommends that we grant the Plaintiff's Motion for Summary Judgment (Doc. 28) and deny Defendant James Drumheiser's ("Drumheiser") cross-Motion for Summary Judgment. (Doc. 39). Drumheiser filed objections to the R&R on September 2, 2010. (Doc. 55). No other parties have filed objections to the R&R and the time for doing so has lapsed. Accordingly, this matter is ripe for disposition. For the reasons set forth below, the Court will adopt the Magistrate Judge's R&R, grant the Plaintiff's Motion for Summary Judgment, deny Drumheiser's cross Motion for Summary Judgment and close this case.

I.     PROCEDURAL BACKGROUND

Plaintiff Empire Fire and Marine Insurance Company ("Empire"), filed a Complaint for Declaratory Judgment on March 9, 2009 against Defendants Robert A. Jones, d/b/a R.A. Jones & Sons (" Jones") and Drumheiser seeking this Court's determination of Empire's obligation to provide liability coverage to Jones.[1] (Doc. 1). This action arose when Drumheiser was injured by a garbage truck owned and operated by Jones. Jones filed an Answer to Empire's Complaint on April 23,

---

[1] We have jurisdiction over this case pursuant to 28 U.S.C. § 1332 and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

2009.  The following day, Drumheiser filed an Answer to Empire's Complaint, a cross claim against Jones,[2] and counterclaims against Empire.[3]

Following the close of discovery, Empire filed a Motion for Summary Judgment against Drumheiser and Jones.  (Doc. 28).  Drumheiser filed a cross-Motion for Summary Judgment against Empire.  (Doc. 38).  We referred both of the Motions to Magistrate Judge Blewitt for an R&R.  As noted above, on August 19, 2010, Magistrate Judge Blewitt issued the instant R&R, recommending that Empire's Motion be granted in its entirety and that Drumheiser's Motion be denied in its entirety.

## II. FACTUAL BACKGROUND

On August 19, 2008, Drumheiser was working for Jones' trash collection business.  After tossing a bag of trash into the back of Jones' garbage truck, Drumheiser attempted to jump aboard the outside of the truck.  As Drumheiser attempted to board the truck, he slipped and fell from the truck onto the road.  The

---

[2] Drumheiser's cross claim against Jones was dismissed by Court Order on October 14, 2009.  (Doc. 25).

[3] Drumheiser's counterclaims against Empire are: 1) request for declaratory relief seeking this Court to declare that he is entitled to Empire's liability coverage benefits; 2) claim for breach of contract for Empire's refusal to supply him with liability coverage benefits; and 3) a claim that Empire acted in bad faith by denying him liability coverage in violation of 42 Pa. C.S.A. § 8371.

garbage truck, driven by Jones, proceeded to run over Drumheiser's lower leg causing severe injuries.

Empire was Jones' insurance provider at the time of the above incident. The policy provides "Truckers Coverage" to Jones doing business by and through R.A. Jones & Sons for accidents involving Jones' garbage truck. At issue in this case is whether Empire's insurance policy issued to Jones provides liability coverage Jones for the Drumheiser accident. The relevant portions of Empire's policy provide:

>    **SECTION II - LIABILITY COVERAGE**
>
>    **A.    Coverage**
>
>    We will pay all sums an "Insured"[4] legally must pay as damages because of "bodily injury" or property damage to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

(Doc. 28, Ex. A, p. 38).

The provisions below list "Exclusions" to the Empire policy's liability coverage. Relevant to this case is the "Employee" Exclusion to the policy's liability coverage. Specifically, the relevant Exclusions are as follows:

>    **B.    Exclusions**
>    This insurance does not apply to any of the following:

---

[4] It is not disputed that Jones is an "Insured" pursuant to the insurance contract.

**4. Employee Indemnification and Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business;

or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract." For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

(Doc. 28, Ex. A, p. 39).

There are several definitions in the policy that are relevant to this case. Specifically, they are as folows:

**SECTION V - DEFINITIONS**

> **F.** "Employee includes a "leased worker." "Employee" does not include a "temporary worker."
>
> **I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include "temporary worker."
>
> **O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

(Doc. 28, Ex. A, pp. 46-47).

Although the definition of "Employee" merely explains what the word includes and not what it means, as Magistrate Judge Blewitt aptly noted, the parties seem to agree that if Drumheiser does not fit the definition of "Temporary worker," he falls under the "Employee" exclusion to the policy's liability coverage. Thus, the critical issue in this case is whether Drumheiser was a "Temporary worker" *vel non* under the policy at the time of the accident.

At the relevant time, Jones had a business which provided coal and trash hauling services. About one year prior to the incident on August 19, 2008, Jones ran into Michael and Gloria Kalman ("the Kalmans") at a local restaurant. During this encounter, Jones expressed that he was looking for someone to help him with his hauling services. It was at this time that the Kalmans recommended

Drumheiser to Jones, with the understanding that Drumheiser would continue to work for the Kalmans as well.[5] A week or two following this encounter, Jones called Drumheiser to solicit his labor. Drumheiser agreed to work for Jones in addition to working for the Kalmans.

Drumheiser did not have a written employment contract with Jones or the Kalmans. Instead, a loosely understood arrangement evolved among the parties. Drumheiser testified that he would work one or two days a week for Jones and it would only be a couple of hours in the morning and never in the afternoon. The Kalmans mostly used Drumheiser's services in the late mornings and afternoons. Occasionally, on days Drumheiser would work for Jones, Drumheiser would call Mr. Kalman and inform him of his plans to work for Jones. Sometimes, Drumheiser would ask Mr. Kalman if it was "ok" for him to work for Jones. Mr. Kalman testified that there was never a time when his need for Drumheiser's help conflicted with Jones' need for Drumheiser's help. Further, it is admitted that Jones never paid the Kalmans for Drumheiser's work.

On the day of the accident, Drumheiser called Mr. Kalman and told him that he made arrangements to work for Jones in the morning and that he would work for Kalman in the afternoon. On that day, Jones picked Drumheiser up around

---

[5] Drumheiser helped maintain properties owned by the Kalmans by cutting grass and removing trash.

6:15 a.m. and they started hauling trash around 7:00 a.m. The accident occurred around 11 a.m.

The parties dispute whether the Kalmans "loaned" Drumheiser to Jones for the purpose of assisting Jones with his trash hauling service. Mr. Kalman testified:

> "Well Jonesy said to me, look, I'm strapped for a helper because I know that's the way Jonesy was sort of doing it, it just seemed like he couldn't hold a helper. And then he said to me, he was really disgusted, I said listen, I'll *loan* you Buttons (Drumheiser) but I want him back. I mean it was just a figure of speech. I mean I had no control over Buttons but I just said I'll *loan* you Buttons but I want him back but like in a kidding way and Buttons came every day."

(Doc. 32, Kalman Dep., p. 37)(emphasis added). While Kalman admitted that he was Drumheiser's primary employer, he also admitted that he had "no right or authority to prevent him (Drumheiser) from working with anyone." (Doc. 32, Kalman Dep., p. 13).

### III. STANDARDS OF REVIEW

#### A. Review of Magistrate Judge's R&R

When objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980). The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or

recommendations. *Id.* Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

B.     **Summary Judgment**

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## IV. DISCUSSION

### A. Summary of the R&R

With respect to Empire's Motion for Summary Judgment, Magistrate Judge Blewitt concluded that Drumheiser was not considered a "Temporary worker" under the policy and that he was instead an "employee" of Jones as defined in Empire's policy. Thus, his accident is excluded from Empire's liability coverage owed to Jones. Accordingly, Magistrate Judge Blewitt recommends that Empire's Motion be granted and Drumheiser's cross-Motion on this point be denied.

Magistrate Judge Blewitt also recommends that Drumheiser's cross-Motion for Summary Judgment be denied with respect to his breach of contract and bad faith claims. With regard to the breach of contract claim, Magistrate Judge Blewitt concluded that Drumheiser could not sue Empire for breach of contract because Drumheiser was not a party to the insurance contract between Jones and Empire. With respect to the bad faith claim, Magistrate Judge Blewitt found that Empire promptly addressed Drumheiser's claims for first party benefits and paid the full amount of medical benefits available to Drumheiser under the policy. Moreover, Magistrate Judge Blewitt noted that because Drumheiser is a third party claimant, not an insured, he cannot have a cause of action for bad faith. *See Allen v. General Accident Ins. Co.*, 2004 WL 322664 (Pa. Com. Pl. 2004)

B.   **Objections to the R&R**

On September 2, 2010, Drumheiser filed objections to the R&R. Specifically, Drumheiser objects to Magistrate Judge Blewitt's recommendation that Empire's Motion for Summary Judgment be granted.

Drumheiser does not object to Magistrate Judge Blewitt's recommendation that Drumheiser's cross-Motion for Summary Judgment be denied with respect to his breach of contract and bad faith claims. Because we agree with the sound reasoning that led the Magistrate Judge to recommend denial of summary judgment on the breach fo contract and bad faith claims, and because those recommendations are not objected to, we shall adopt these recommendations.

Thus, the only issue for our review is the Magistrate Judge's recommendation to grant Empire's Motion for Summary Judgment, and specifically, whether or not Drumheiser qualifies as a "Temporary worker" under the policy.

C.   **De Novo Review**

When making determinations about insurance policy coverage, courts must initially decide the scope of the insurance coverage and then review the allegations raised in the pleading to see if they would fall within the scope of the policy if proven. *See Britamco Underwriters, Inc. v. Grzeskiewicz*, 433 Pa. Super. 55, 59

(1994)(citation omitted). Under Pennsylvania law, insurance contract interpretation is a question of law for the court to decide. *See Reliance Ins. Co. v. Moessner*, 121 F. 3d 895, 900 (3d Cir. 1997)(citation omitted). The goal of contract interpretation is "to ascertain the intent of the parties as manifested by the language of the written instrument." *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300 (Pa. 1983).

> As summarized by the Third Circuit Court of Appeals:
>
> [I]n Pennsylvania a court construes ambiguities in an insurance policy strictly against the insurer. *See, e.g., Selko v. Home Ins. Co.,* 139 F. 3d 145, 152 n. 3 (3d Cir. 1998)( citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300 (Pa. 1983). Nevertheless, in Pennsylvania, and no doubt elsewhere, "[c]lear policy language . . . is to be given effect, and courts should not torture the language to create ambiguities but should read the policy provisions to avoid it." *Selko*, 139 F. 3d at 152 n. 3 (internal citations and quotation marks omited). In construing policy language, courts should consider any special usage "[w]here terms are used in a contract which are known and understood by a particular class of persons in a certain special or peculiar sense[.]" *Sunbeam Corp. v. Liberty Mutual Ins. Co.*, 566 Pa. 494 (Pa. 2001).

*USX Corp. v. Liberty Mutual Insurance Co.*, 444 F. 3d 192 (3d Cir. 2006).

With regard to policy exclusions, a Court is required to give effect to them if the exclusion is clearly worded and conspicuously displayed in the policy. *Giangreco v. United States Life Insurance Co.,* 168 F. Supp. 2d 417, 421 (E.D. Pa. 2001). However, ambiguous policy exclusions are "always strictly construed

13

against the insurer and in favor the insured." *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F. 3d 197, 206-07 (3d Cir. 2001)(citing *Selko v. Home Ins. Co.*, 139 F. 3d 146, 152 n. 3 (3d Cir. 1998)). A policy exclusion is ambiguous if "reasonably intelligent [persons] on considering it in the context of the entire policy would honestly differ as to its meaning and if more precise language could have eliminated the ambiguity." *Corgis Ins. Co. v. Larocca*, 80 F. Supp. 2d 452, 455 (E.D. Pa. 1999) (internal citations omitted). The insurer bears the burden of establishing the applicability of an exclusion under an insurance policy. *Cosenza*, 258. F. 3d 206.

As noted above, the parties do not dispute that Drumheiser falls under the "Employee exclusion" of the Empire policy if his status does not fit the policy's "Temporary worker" definition. Thus, the issue for our determination is whether Drumheiser is a "Temporary worker" under the policy, or, whether the policy's "Temporary worker" definition is sufficiently ambiguous for the Court to render declaratory judgment in favor of Drumheiser pursuant to Pennsylvania contract law. If the Court finds that Drumheiser fits the "Temporary worker" definition, then the policy's liability coverage applies to Jones in the event Drumheiser sues Jones for damages. Or, if the Court finds that the "Temporary worker" definition of the policy is ambiguous, and that Drumheiser plausibly fits the ambiguous

14

definition, then the insurance policy's liability coverage does apply to Jones in the event Drumheiser sues Jones for damages. Finally, and in the alternative, we may find that the "Temporary worker" definition is not ambiguous, Drumheiser does not fit within it, and thus the exclusion applies and coverage exists.

Thus, our first task is to determine whether Empire's policy definition for "Temporary worker" is ambiguous. As previously noted, the policy defines "Temporary worker as" a "person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions." (Doc. 28, Ex. A, p. 47). Just as Magistrate Judge Blewitt noted, we find that there is no evidence that Drumheiser was a "substitute for a permanent employee on leave," thus the 'substitute' portion of the "Temporary worker" definition is not for our consideration. Therefore, we must determine whether an ambiguity exists as to whether Drumheiser was "furnished to [Jones] . . . to meet seasonal or short-term workload conditions."

In *Nautilus Ins. Co. v. Gardner*, 2005 U.S. Dist. LEXIS 4423 (E.D. Pa. Mar. 21, 2005), the district court Eastern District of Pennsylvania, tasked to interpret an insurance contract, was confronted with the identical policy exclusion as in the case *sub judice* containing the phrase "furnished to you." In *Nautilus*, the employer, William Gardner, who operated a Halloween haunted house during

15

October, had liability insurance with Nautilus.  A female employee of Gardner's sued him after being sexually assaulted by another of Gardner's employees.  Under the policy, an employee, as in our case, was defined to include a "leased worker," but it excluded a "temporary worker."  The "Temporary worker" definition in *Nautilus* is identical to the definition at issue in our case, namely "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short term workload conditions."  The issue, like the issue here, was whether the female employee was a "Temporary worker" under the policy.

The *Nautilus* court noted that the Pennsylvania Supreme Court had not yet spoken to the issue of whether the term "furnish" was ambiguous in Pennsylvania insurance law, but predicted that "the Pennsylvania Supreme Court would hold that the term 'furnished to you' in the instant insurance policy is not ambiguous under Pennsylvania law."  *Id*. at *19.  After a full review of the case law and the reasoning of the *Nautilus* court's reasoning, we agree.  The district court noted that courts in both the Western District of Pennsylvania and the Pennsylvania Courts of Common Pleas had looked to Black's Law Dictionary to define the term "furnish" in insurance contracts governed by Pennsylvania law.  *Id*. (citing *Gradler v. Prudential Prop. & Cas. Ins. Co.,* 464 F. Supp. 575, 578-79 (W.D. Pa. 1979)("The word, 'furnish,' is variously defined as follows: To supply or provide; For use in

16

the accomplishment of a particular purpose; Implying some active effort to accomplish the designated end.") citing Black's Law Dictionary (4th ed. 1968). Ultimately the *Nautilus* court concluded that:

> It is clear that to be "furnished," something or someone must be supplied, provided, or equipped to another entity or person. Thus, the phrase 'furnished to you,' when read together with the entire sentence, refers to a person supplied, provided, or equipped to the insured to substitute for a permanent employee or to engage in seasonal or short-term work.

*Nautilus, supra* at *21. The court concluded that the female employee was not supplied to Gardner, thus she did not constitute a "Temporary worker."

Having determined that the policy exclusion at issue here is not ambiguous, we must determine whether Drumheiser fits within the definition of "Temporary worker." Drumheiser argues that the Kalmans "furnished" him to Jones for short-term employment. We, like Magistrate Judge Blewitt, do not agree with this argument. While the Kalmans were, quite clearly, Drumheiser's primary employers, the Kalmans did not supply or provide Drumheiser to Jones, inasmuch as they had no control over Drumheiser. Drumheiser could have just as easily refused Jones' offer of employment as he did accept it. Quite simply, Drumheiser was not the Kalmans' property that they could supply, provide, or *furnish* to Jones. Instead, they gave Jones a referral to Drumheiser, and Jones contacted Drumheiser

himself to set up the terms of Drumheiser's employment with Jones.[6] Likewise, the Kalmans ultimately had no power to set the conditions of Drumheiser's employment with Jones, nor could they recall Drumheiser from that employment without his consent. Mr. Kalman's understandable desire to share the fruits of a person he considered to be an excellent part-time worker does not transform Drumheiser into a "Temporary worker," as set forth in the exclusion.

Accordingly, we find that Drumheiser is not a "Temporary worker" under Empire's policy, and thus his accident is excluded from Empire's liability coverage owed to Jones.

## V.   CONCLUSION

Based on all of the foregoing, we shall adopt the Magistrate Judge's R&R in its entirety and shall overrule the objections of Drumheiser. Empire's Motion for Summary Judgment shall be granted and Drumheiser's cross-Motion for Summary Judgment shall be denied. An appropriate Order shall issue.

---

[6] Within the R&R, Magistrate Judge Blewitt cited to ample deposition testimony of the Kalmans, Jones and Drumheiser that supports his recommendation as well as our conclusion that the Kalmans did not "furnish" Drumheiser to Jones. As noted herein, we may place as much reliance as we deem appropriate on the reasoning of the Magistrate Judge when analyzing any objections to the R&R. Thus, for the sake of judicial economy, inasmuch as we would be citing the very same transcript portions as Magistrate Judge Blewitt did within the R&R, we shall not rewrite his R&R in our Memorandum and Order, but refer the reader to pages 19-21 of the R&R for the relevant deposition testimony.